[Cite as *State v. Brocker*, 2015-Ohio-3412.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**PORTAGE COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2014-P-0070** |
| BRADEN K. BROCKER, | : | |
| Defendant-Appellant. | : | |

Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R 2014 TRC 5319.

Judgment:  Affirmed.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH  44266 (For Plaintiff-Appellee).

*David J. Betras*, Betras, Maruca, Kopp, Harshman & Bernard, L.L.C., 6630 Seville Drive, Suite #1, P.O. Box 129, Canfield, OH  44406-0129. (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1}    Appellant, Braden K. Brocker, seeks reversal of the trial court's denial of his motion to suppress.  He claims he was subject to a custodial interrogation without being read his *Miranda* warnings.  For the following reasons, we affirm.

{¶2}    Appellant was pulled over for speeding by an Ohio State Highway Patrol trooper after midnight in April of 2014.  He was alone in the car.  The trooper told appellant that he was being issued a warning ticket for speeding.

**{¶3}** The trooper noticed that appellant's eyes were bloodshot and glassy and that he had a strong odor of alcoholic beverage coming from his mouth. He asked appellant to step out of his vehicle so that he could conduct his interview and to see if he could continue to smell alcohol. Appellant consented to a pat down search, and the trooper had him enter his patrol car. The trooper testified that he had appellant sit in the front seat of the patrol car while he checked appellant's license and plates. The trooper confirmed that the front door was unlocked; that appellant was not handcuffed; and that he was not under arrest at that point. However, appellant testified that he "believed" he was placed in the backseat of the patrol car and that he did not feel free to leave. Unlike the front seat, the trooper explained that someone placed in the back seat of a patrol car is in a cage and is not free to leave.

**{¶4}** While they were both seated in the patrol car, the trooper asked appellant a few questions pertaining to his alcohol consumption that day. Appellant admitted drinking a single beer three hours earlier and drinking quite a few earlier that day. Based on appellant's admissions, strong smell of alcoholic beverage, and glassy and bloodshot eyes, the trooper got appellant out of the patrol car and had him perform the standard field sobriety tests to determine whether he was okay to drive. Appellant explained that he felt compelled to perform the field tests because he thought he was under arrest or that he was going to be arrested because he was placed in the patrol car. Appellant performed very poorly on the field sobriety tests.

**{¶5}** After the completion of the field tests and the implementation of the portable breathalyzer test, the trooper placed appellant under arrest for operating his vehicle while impaired. Appellant was then handcuffed and read his *Miranda* warnings.

{¶6}   Appellant pled not guilty and moved the trial court to suppress evidence from his traffic stop. The motion was heard by the Portage County Municipal Court and was denied via its September 12, 2014 Journal Entry.

{¶7}   Following the denial of his motion to suppress, appellant pled no contest to the charge of OVI in violation of R.C. 4511.19(A)(1)(a). The trial court found him guilty. Appellant timely appeals and asserts one assignment of error:

{¶8}   "The trial court failed to make findings of fact and thus did not articulate a legally sufficient ruling on the issue, raised in the Defendant-Appellant's Motion to Suppress Evidence, that he was subjected to custodial interrogation and in response made incriminating statements without first being read his Miranda Rights, in violation of his Constitutionally protected right to remain silent and privilege against self-incrimination."

{¶9}   The motion to suppress set forth three distinct grounds for suppression. Counsel raised each of these grounds at the suppression hearing and each was addressed by the prosecutor in his remarks. During his closing, appellant's counsel argued that appellant's admissions of drinking resulted in the administration of the field sobriety tests, and as a result, his arrest based on those tests was unlawful. The trial court judge never directly ruled on the issue as to whether appellant was in custody at the time of his admission. Appellant now challenges the trial court's lack of findings on this issue and claims that the subsequent field sobriety tests and arrest were contrary to law.

{¶10}  Ordinarily an appellate court reviews a trial court's decision on a motion to suppress pursuant to a two-step process. First, an appellate court must accept

3

findings of fact on a motion to suppress if they are supported by competent and credible evidence. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8 citing *State v. Fanning*, 1 Ohio St.3d 19, 1 Ohio B. 57, 437 N.E.2d 583 (1982). The trial court judge acts as the trier of fact and is in the best position to assess witness credibility. *Id*. Second, an appellate court must independently verify whether the facts found by the trial court satisfy the applicable legal standard. *Id.* citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist. 1997).

**{¶11}** Pursuant to Crim.R. 12(F), a trial court "shall state its essential findings on the record" in order to facilitate effective appellate review. *Kirtland Hills v. Medancic*, 11th Dist. Lake Nos. 2011-L-136 & 2011-L-137, 2012-Ohio-4333, ¶8, citing *State v. Marinacci*, 5th Dist. Fairfield No. 99-CA-37, 1999 Ohio App. LEXIS 5279, *4 (Nov. 3, 1999). A trial court must recite its factual findings in order to enable an appellate court to determine whether the trial court's factual findings are supported by the record and if the trial court applied the correct law. *Kirtland Hills* at ¶8, citing *State v. Bailey*, 5th Dist. Muskingum No. CT2002-0041, 2003 Ohio App. LEXIS 5690, *6 (Nov. 21, 2003).

**{¶12}** In the instant case, we agree with appellant that the trial court failed to address this prong of his suppression motion. It did not make any findings on this issue either in its written decision or at the hearing. Nevertheless, no resulting prejudice is apparent, and appellant did not request findings of fact. This court has previously found that a trial court's failure to set forth its essential findings is not fatal if the record provides a sufficient basis to review appellant's assigned errors on appeal. *State v. Armstrong,* 11th Dist. Portage No. 2012-P-0018, 2013-Ohio-2618, ¶24; *State v. Sands*, 11th Dist. Lake No. 2006-L-171, 2007-Ohio-35, ¶36; *State v. Harris*, 8th Dist.

4

Cuyahoga No. 85270, 2005-Ohio-2192, ¶18-19. Even absent findings and conclusions, the trial court's denial of the motion to suppress was legally justified and supported by the record.

{¶13} *Miranda* warnings must be provided when a defendant is subject to a custodial interrogation. A custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444-468, 86 S.Ct. 1602 (1966).

{¶14} The roadside questioning of a motorist detained pursuant to a routine traffic stop does not usually constitute a custodial interrogation and invoke the requirement that the driver be read his *Miranda* warnings. *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138 (1984). In *Berkemer*, the Supreme Court held that *Miranda* was not implicated where the driver, who was stopped for swerving, was questioned about his drinking during the traffic stop. *Id*. at 439. Instead, the court explained that the "noncoercive aspect of ordinary traffic stops prompt us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." *Id*. at 440. Instead, the *Miranda* safeguards are implicated when "a suspect's freedoms are curtailed to a 'degree associated with formal arrest.'" *Id*. quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983). "It is not a detainee's freedom of movement that makes a traffic stop constitutionally unoffensive. It is, instead, the relative brevity, limited scope, and non-threatening character of the police intrusion." *State v. Wineberg*, 2d Dist. Clark No. 97-CA-58, 1998 Ohio App. LEXIS 1159, *15 (Mar. 27, 1998), citing *Berkemer.*

5

{¶15} In *State v. Rice*, 1st Dist. Hamilton Nos. C-090071-C-090073, 2009-Ohio-6332, the First District reversed the trial court's suppression of the motorist's admissions made while he was in the back seat of the police cruiser before he was read his *Miranda* warnings during a traffic violation stop. It held that the defendant was not in custody for *Miranda* purposes. The officer smelled alcohol and placed the driver in the back of the cruiser to determine the source of the odor and to confirm that the smell was not coming from either of the two passengers. The officer explained that the driver was placed in the cruiser for safety reasons since there was high-speed traffic on the interstate. The court emphasized that the driver was not handcuffed at the time and that the officer's questioning was neither lengthy nor intimidating. *Id.* at ¶10-15.

{¶16} In *State v. Serafin*, 11th Dist. Portage No. 2011-P-0036, 2012-Ohio-1456, this court held that the motorist was not in custody for *Miranda* purposes during a routine traffic stop. Serafin was alone when he was pulled over for speeding. The officer explained that Serafin smelled of alcohol and that his eyes were glassy. Serafin was ordered to accompany the officer to the patrol car so he could complete his investigation. The officer confirmed that the alcohol odor was coming from Serafin, so he asked him how much he had to drink that night. Serafin admitted to having a couple beers over dinner, and the officer then initiated the field sobriety tests. The video of the traffic stop confirmed that approximately six minutes passed from the time of the initial stop until the officer began the field tests. Serafin was subsequently arrested and read his *Miranda* warnings at that time. On appeal, we upheld the denial of the motion to suppress because the questioning in the cruiser during the temporary detention for speeding was never elevated beyond the purpose of the initial stop. *Id.* at ¶8-15.

6

**{¶17}** Other appellate courts have considered comparable facts and agreed that most traffic stops and accompanying investigatory questioning do not constitute custodial interrogations warranting the right to *Miranda* warnings. *State v. Engle*, 2d Dist. Montgomery No. 25226, 2013-Ohio-1818; *State v. Barnett*, 2d Dist. Montgomery No. 14019, 1994 Ohio App. LEXIS 4767, (Aug. 31, 1994) (holding that roadside questioning of motorist while in the rear of the police cruiser for a short period of time does not constitute a custodial interrogation); *State v. Leonard*, 1st Dist. Hamilton No. C-060595, 2007-Ohio-3312, ¶22-23 (holding that the intrusion was minimal based on the short length of the detention and the fact that the officer did not take the defendant's keys or search his vehicle); *State v. Wineberg*, 2nd Dist. Clark No. 97-CA-58, 1998 Ohio App. LEXIS 1159, (Mar. 27, 1998) (holding in part that the detention of a driver in the back seat of a cruiser during a traffic stop does not invoke *Miranda* protection).

**{¶18}** Like the facts in *Serafin* and *Rice*, the record before us confirms that the routine questioning during the traffic stop detention in this case did not rise to a custodial interrogation, regardless of whether appellant was in the front or back seat of the patrol car at the time. A review of the DVD of the traffic stop reveals that the detention was brief, i.e., less than six minutes from the time the trooper approached appellant's car to the time he began the field tests, and that the questioning was neither lengthy nor intimidating. The trooper did not take appellant's keys and did not search appellant's vehicle. Instead, appellant's incriminating admissions were made during the traffic stop and attendant investigation for the issuance of the warning for speeding.

7

Accordingly, *Miranda* warnings were not required before appellant made his incriminating statements. The trial court appropriately denied the motion to suppress.

{¶19} Based on the foregoing, it is the judgment and order of this court that the decision of the Portage County Municipal Court is affirmed.


CYNTHIA WESTCOTT RICE, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.


_____


COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶20} As the majority notes, failure by a trial court to set forth its essential findings of fact in a suppression hearing pursuant to Crim.R. 12(F) may not be reversible error if the record provides a sufficient basis for an appellate court to review any error assigned. *Armstrong, supra*, at ¶24. Unlike the majority, however, I do not find the record in this case sufficient to decide appellant's contention he was held in custody prior to being *Mirandized* without a finding on this issue by the trial court.

{¶21} According to Trooper Engle's testimony, he stopped appellant for speeding, and observed typical indicia of intoxication: bloodshot, glassy eyes, and a strong odor of alcohol. The trooper asked appellant to exit his car, and performed a pat down, then placed appellant in the front seat of his cruiser, and questioned him about his drinking. The trooper emphasized that he does not consider a person under arrest until he or she is placed in the secure back seat of the cruiser. The trooper then exited

8

the cruiser, and took appellant out by the passenger door, and had him perform the field sobriety tests, prior to placing him under arrest.

{¶22} Even on the trooper's own testimony, appellant might reasonably consider himself in custody when he was placed in the front seat of the cruiser, before being questioned about his drinking. I respectfully question whether a reasonable person would consider him or herself free to not answer questions, and leave, under these circumstances. If not, this was custodial interrogation, and appellant should have been given his *Miranda* warnings at the time. *See, e.g.*, *Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

{¶23} Further, there is a discrepancy between the testimony of the trooper, and appellant. The majority states appellant testified he "believed" he was placed in the back seat, not the front seat, of the cruiser. The actual testimony elicited is as follows:

{¶24} Defense counsel: "When you were in his – the first time he placed you in the car, were you in the back seat or the front seat?"

{¶25} Appellant: "I believe was in the back seat."

{¶26} Defense counsel: "You believe or you know?"

{¶27} Appellant: "I was in the back seat."

{¶28} The trooper's own testimony was that he considers a person under arrest when placed in the back seat of his cruiser. When an issue of credibility is essential to determining a motion to suppress, and a trial court makes no finding regarding credibility, the proper response of an appellate court is to reverse and remand, so the trial court can make that finding. *State v. Payne*, 9th Dist. Wayne No. 11CA0029, 2012-Ohio-305, ¶13-15.

9

**{¶29}** I would reverse and remand for the trial court to make further findings under Crim.R. 12(F).

**{¶30}** I respectfully dissent.